**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHELSEA HERNANDEZ & SAMANTHA RELAY,<br><br>Plaintiffs,<br><br>v.<br><br>BRINKER INTERNATIONAL PAYROLL COMPANY, L.P. D/B/A CHILI'S GRILL & BAR – STORE #426 AND CARRIE BUCHANAN,<br><br>Defendants. | Civil Action No. 20-17667 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Brinker International Payroll Company, L.P. d/b/a Chili's Grill & Bar – Store # 426 ("Brinker") and Carrie Buchanan's (together with Brinker, "Defendants") Motion to Compel Arbitration and Dismiss Plaintiffs Chelsea Hernandez and Samantha Relay's ("Plaintiffs") Complaint. (ECF No. 7.) Plaintiffs opposed (ECF No. 11), and Defendants replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1.

**I.   BACKGROUND**

Plaintiffs are former employees of Defendant Brinker. (Compl. ¶¶ 18, 60, ECF No. 1.) Brinker owns and operates a Chili's restaurant in Monmouth County, New Jersey. (*Id.* ¶¶ 6, 13.) Hernandez began working at Chili's on or about March 5, 2019. (*Id.* ¶ 18.) Relay began working at Chili's on September 16, 2019. (*Id.* ¶ 60.) Both Plaintiffs were minors at the time they were

hired; Hernandez was sixteen years old, and Relay was seventeen years old. (*Id.* ¶¶ 19, 61.) Defendant Buchanan was the General Manager of the Chili's during the time period that both Plaintiffs were employed there. (*Id.* ¶¶ 20, 62.)

At the start of their employment, Plaintiffs individually acknowledged and agreed to submit disputes to binding arbitration. (*See* Defs.' Cert., Exs. G, H, ECF No. 7-2 ("Arbitration Agreements").) The Arbitration Agreements provide in relevant part:

> Brinker and you agree to arbitrate all disputes . . . involving legal or equitable rights . . . . This includes, for example, disputes about the hiring process or applications for employment, the terms and conditions of employment, wages and pay, leaves of absence, reasonable accommodation . . . or termination of employment. Such claims include, but are not limited to, those under . . . Title VII of the Civil Rights Act of 1964 . . . .

(*Id.*) In addition to the Arbitration Agreements, Plaintiffs also received a copy of Brinker's Policies and Procedures Manual (the "Manual"), containing Brinker's mandatory arbitration policy. (Defs.' Cert., Ex. D.) Plaintiffs Hernandez and Relay also acknowledged receipt of Brinker's Manual on March 5, 2019, and September 6, 2019, respectively, and once again, assented to abide by the detailed Arbitration Agreements. (Defs.' Moving Br. 3, ECF 7-1.) According to Brinker, Brinker would not have hired Plaintiffs if they had not signed its Arbitration Agreements. (Defs.' Moving Br. 5.)

Plaintiffs allege that during their respective terms of employment, they were sexually harassed by other employees. (Compl. ¶¶ 35, 67) On or about March 11, 2020, Plaintiffs resigned from their employment. (Defs.' Moving Br., 5) On May 1, 2020, Plaintiffs filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Pls.' Opp'n Br. 5, ECF No. 11.) On November 2, 2020, Plaintiffs received a Right to Sue letter from the EEOC. (*Id.*) The Complaint, brought on December 1, 2020, alleges causes of action for: (1) discrimination in violation of Title

2

VII of the Civil Rights Act of 1964, (2) retaliation in violation of Title VII, (3) discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), (4) retaliation in violation of the NJLAD, and (5) aiding and abetting discrimination in violation of the NJLAD. (*See* Compl. ¶¶ 90-108.) On February 18, 2021, Defendants responded to the Complaint by filing this Motion to Compel Arbitration and Dismiss Plaintiffs' Complaint. (ECF No. 7.) Plaintiffs opposed (ECF No. 11), and Defendants replied (ECF No. 15).

## II.  LEGAL STANDARD

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the [Federal Arbitration Act ('FAA')], a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal citations omitted). But "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he [or she] do so." *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2019 WL 4855624, at *2 (D.N.J. Oct. 2, 2019) (first alteration in original) (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

The Supreme Court has emphasized that the "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA declares that '[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Preziosi v. JetSmarter, Inc.*, No. 19-13627, 2020 WL 978637, at *2 (D.N.J. Feb. 28, 2020) (alterations and omissions in original) (quoting 9 U.S.C. § 2). "It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes

through arbitration.'" *Kirleis*, 560 F.3d at 160 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "But this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

### III. DISCUSSION

#### A. The Parties' Positions.

As the parties admit, this case presents a matter of first impression for this Court: In New Jersey, is an agreement to arbitrate signed by a minor valid and enforceable or may the minor disaffirm the agreement? (*See* Defs.' Moving Br. 17; Pls.' Opp'n Br. 10.) Defendants assert that the Arbitration Agreements are valid and enforceable against Plaintiffs. (Defs.' Moving Br. 12.) Defendants maintain that the Arbitration Agreements "contain all the elements required to establish that a binding contract has been created." (*Id.*) Defendants argue that Plaintiffs' refusal to consent to arbitration based upon the infancy doctrine is misguided because the public policy in favor of arbitration—well-settled in New Jersey and federal courts—overrides the infancy doctrine. (*Id.* at 20.) And Defendants argue that Plaintiffs may not disaffirm the contracts because New Jersey requires minors who void a contract to put the other party back to the status quo, and that is not possible here because Plaintiffs cannot return the "benefits" of their past employment. (*Id.* at 21.)

Plaintiffs counter that, here, there was no "meeting of the minds" between Plaintiffs and Defendants. (Pls.' Opp'n Brief. 1.) Plaintiffs contend that minors generally do not have the capacity to enter valid contracts. (*Id.* at 1-2.) Plaintiffs further argue that the Arbitration Agreements are not enforceable against Plaintiffs because they were minors when they signed the agreements, and they did not ratify the agreements. (*Id.* at 1.)

4

### B. The Infancy Doctrine in New Jersey is Limited.

The infancy doctrine provides that, generally, contracts of a minor, other than contracts for necessities, are voidable but not necessarily void. *See Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992); *see also In re The Score Bd., Inc.*, 238 B.R. 585, 593 (D.N.J. 1999) (citing *Sacco v. Schallus*, 78 A.2d 143, 145 (N.J. Super. Ct. Ch. Div. 1950)). Although longstanding, the infancy doctrine is not without limits. *See Rodriguez v. Reading Hous. Auth.*, 8 F.3d 961, 964 (3d Cir. 1993). New Jersey requires that "an infant must restore the other party to the [s]tatus quo to the extent of the benefits the infant has received, if the other party is free from fraud or bad faith." *Boyce v. Doyle*, 273 A.2d 408, 410 (N.J. Super. Ct. Law Div. 1971).

New Jersey courts have also previously limited the infancy doctrine in the context of arbitration agreements. In *Hojnowski v. Vans Skate Park*, the New Jersey Supreme Court considered (1) whether New Jersey's public policy permits a parent to release a minor's potential tort claims, and (2) whether a parent can bind a minor to an agreement to arbitrate future disputes arising out of a contract. 901 A.2d 381, 386, 391 (N.J. 2006). The Court ruled that a parent may not release a minor's tort claims, relying heavily on New Jersey's public policy that disfavors exculpatory agreements such as the liability release at issue in *Hojnowski*. *Id.* at 386-90 (citing *Gershon v. Regency Diving Ctr.*, 845 A.2d 720, 726-27 (N.J. Super. Ct. App. Div. 2004); *Ultimate Comput. Servs., Inc. v. Biltmore Realty Co.*, 443 A.2d 723, 726 (N.J. App. Div. 1982), *certif. denied*, 450 A.2d 522 (N.J. 1982)). But on the issue of the arbitration agreement, the New Jersey Supreme Court concluded that "permitting *arbitration of a minor's claims* is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children." *Id.* at 393 (emphasis added). The Court reiterated the deep-rooted federal and state public policy that "arbitration . . . is a favored means of dispute resolution." *Id.* at 392 (citing

*Martindale v. Sandvik, Inc.*, 800 A.2d 872, 876-77 (N.J. 2002); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 669-70 (N.J. 2001); *Marchak v. Claridge Commons Inc.*, 633 A.2d 531, 534-35 (N.J. 1993)). The Supreme Court further highlighted that New Jersey codified its endorsement of arbitration agreements in the Arbitration Act, N.J. Stat. Ann. 2A:24–1 to –11, and ruled that "[i]n accordance with those principles, an agreement to arbitrate generally will be valid under state law unless it violates public policy." *Id.* (citation omitted). The Supreme Court then addressed the apparent juxtaposition between its decision requiring arbitration and its ruling that a parent may not release a minor's tort claims, averring that "[a]s opposed to a pre-injury release of liability, a pre-injury agreement to arbitrate does not require a minor to forego any substantive rights. Rather, such an agreement specifies only the forum in which those rights are vindicated." *Id.* (citations omitted).

Further limiting the infancy doctrine in New Jersey, in *Allgor v. Travelers Insurance Co.*, at issue before a Superior Court was whether an agreement by a named insured to submit all underinsured motorist claims to binding arbitration precludes a minor from seeking a trial by jury. 654 A.2d 1375, 1377 (N.J. App. Div. 1995). There, the Court held that in that instance, "[c]ompelling public policy required binding minors to arbitration because absent such a rule minors could regularly disavow medical care contracts and medical groups would be disinclined to extend such protection to minors." *Id.* at 1379 (citation omitted).

Though the courts in New Jersey have limited the infancy doctrine when pitted against the state's countervailing interest in promoting arbitration, the New Jersey State Legislature has not explicitly weighed in. But labor laws in New Jersey, relevantly, generally allow for the employment of minors in a wide variety of industries. *See generally* N.J. Stat. Ann. 34:2-21.1-.64. For illustration, New Jersey allows minors that are sixteen or older to work as factory machine

6

operators, mechanics, tractor operators, and power tool operators, amongst other jobs that minors may hold. *See generally id.* Indeed, the New Jersey state website provides information on its youth services program that provides resources "to low-income youth, ages 14-24, who face barriers to employment." Youth Services Program - Title I, State of N.J., Dep't of Lab. & Workforce Dev., https://www.nj.gov/labor/wioa/youth/youth_index.html (last visited Sept. 25, 2021). And, as noted, the New Jersey State Legislature has codified that an arbitration agreement "shall be valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity . . . ." N.J. Stat. Ann. § 2A:24-1. Still, the Court notes that neither New Jersey laws nor previous court decisions appear to directly address whether minors who signed agreements to arbitrate may subsequently disaffirm those agreements under the infancy doctrine.

  **C. Other Jurisdictions Have Considered Whether the Infancy Doctrine May Void an Arbitration Agreement.**

Although whether agreements to arbitrate employment disputes, signed by minors, are valid and enforceable is a novel question in New Jersey, the parties highlight several cases in other states and federal districts addressing the issue. Defendants argue that *Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150 (N.D. Ill.1997), and *Douglas v. Pflueger Haw., Inc.*, 153 P.3d 129 (2006), are instructive while Plaintiffs cite *Stroupes v. Finish Line, Inc.*, No. 04-133, 2005 WL 5610231 (E.D. Tenn. Mar. 16, 2005), and *Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230 (D. Me. 2007). The Court provides the facts and reasoning of each chronologically.

This issue appeared in the Northern District of Illinois in *Sheller*, where the Court considered whether minors pursuing sexual harassment claims against their former employer must arbitrate their claims under the relevant employment contract. 957 F. Supp. at 152. Before explaining its' analysis, the Court noted that this was an issue "governed by [Illinois] law." *Id.* at 153. The court in *Sheller* posited "the Illinois Supreme Court would not allow a minor to disaffirm

7

the arbitration clause" based on the facts presented. *Id.* The Court in *Sheller* held "[p]ermitting the minor [p]laintiffs to void their contract would be inconsistent with the public policy reasons underlying the infancy law doctrine." *Id.* They further found that minors are "not entitled to retain an advantage from a transaction which [they] repudiate[]." *Id.* The Court emphasized that "the privilege of minority . . . is to be used as a shield and not as a sword," noting that the plaintiffs were bringing a claim arising out of the very contract they were attempting to disaffirm, with the Court setting forth that "[h]ad [plaintiffs] not been employed by [d]efendant, they would not be eligible to maintain the instant Title VII suit." *Id.* at 153.

The Eastern District of Tennessee next considered this uncommon issue in *Stroupes v. Finish Line, Inc.* In *Stroupes,* a minor plaintiff and her parents brought a claim for sexual harassment pursuant to Tennessee's Human Rights Act. 2005 WL 5610231, at *1 (E.D. Tenn. Mar. 16, 2005). The plaintiff was a sales associate at a retail store and the employment application required that all claims against the retail store be submitted to binding arbitration. *Id.* The Court in *Stroupes* recognized that this was an issue of state law and acknowledged the "void in Tennessee case law on this issue." *Id.* at *2. But the *Stroupes* Court found that "[Tennessee law] permits the minor to void the contract" under the infancy doctrine. *Id.* at *3. The *Stroupes* Court noted that because *Sheller* was a Northern District of Illinois case, it was of limited precedential value. *Id.* The Court in *Stroupes* next held that the plaintiff was not attempting to use the infancy doctrine as a "sword" to injure defendants, but instead, "the only issue affected by [plaintiff's] use of the infancy doctrine is the appropriate forum to adjudicate her claims." *Id.* The *Stroupes* Court also disagreed with the *Sheller* Court's finding that a minor suing an employer for sexual harassment is suing on the contract and that the minor plaintiffs would be retaining the advantage of the employment contract if the arbitration clause was found unenforceable. *Id.* at *4. The *Stroupes*

8

Court, instead, held that "[a] minor suing an employer for sexual harassment is not suing on the contract" and therefore, the minor was not attempting to disaffirm and sue on the contract simultaneously. *Id.* The Court in *Stroupes* also rejected the argument that the arbitration agreement should be enforced because both adults and minors signed the same contract. The *Stroupes* Court reasoned that enforcing the arbitration agreement in that instance would "eviscerate the infancy doctrine altogether." *Id.* Finally, the *Stroupes* Court relied on Tennessee's Protection of Minor Performers Act to conclude that "a minor's employment contracts, including arbitration agreements, are voidable by the minor." *Id.* at *5. The Act specifically provides that "[i]f a contract is approved by the appropriate court pursuant to the provisions of this part, then such minor may not, either during minority or after reaching majority, disaffirm such contract on the ground of minority." T.C.A. § 50-5-207. The Court concluded that, thus, "the legislature acknowledged that a minor's employment contracts are voidable by the minor," at least implicitly. *Id.*

In 2006, the Supreme Court of Hawaii next weighed in, deciding whether a minor was contractually bound by an arbitration provision set forth in an Employee Handbook. *See Douglass*, 135 P.3d at 131. The Court observed that under a Hawaiian statute, minors ages sixteen and seventeen were provided an age certificate, "without regard to occupation or employer" and that this certificate "would be valid for any legal employment." *Id.* at 137. The *Douglass* Court, therefore, found that the Hawaii State Legislature, "by relaxing the requirements for sixteen—and seventeen-year-olds to obtain employment . . . clearly viewed minors in this particular age group—being only one to two years from adulthood—as capable and competent to contract for gainful employment and, therefore, should be bound by the terms of such contracts." *Id.* at 138.

And finally, the District Court of Maine considered the issue in *Foss v. Circuit City Stores, Inc.* The facts reflect that the *Foss* plaintiff worked at a retail store and claimed that his supervisor

9

created a hostile work environment. 477 F. Supp. 2d 230, 232 (D. Me. 2007). In reaching its decision, the Court noted that Maine's statute affirmatively provided that "[n]o action shall be maintained on any contract made by a minor, unless he, or some person lawfully authorized, ratified it in writing after he arrived at the age of 18 years, except for necessaries or real estate of which he has received the title and retains the benefit." *Id.* at 235 (quoting 33 M.R.S.A. § 52). The Court ultimately ruled that this statute was controlling and that "without written ratification, the Agreement never came into existence between Foss and Circuit City." *Id.* at 237.

### D. Enforcement of the Arbitration Agreements is Appropriate Here.

Against the backdrop introduced above, the Court considers the Arbitration Agreements at issue in the present case. The parties agree that if Plaintiffs were adults when they signed the agreements, the Arbitration Agreements would be enforceable against Plaintiffs. (Defs.' Moving Br. 17; Pls.' Opp'n Br. 10.) As Plaintiffs put it, they "do not deny the existence of Defendants' [A]rbitration [A]greement[s]. . . . [i]f Plaintiffs were adults when presented with the [A]rbitration [A]greement[s] this case would not be before this Court." (Pls.' Opp'n Br. 1.) Indeed, the Court is unaware of any precedential case that directly addresses whether a minor may disaffirm an agreement to arbitrate employment matters. The Court finds, however, that New Jersey public policy favors enforcement of the Arbitration Agreements here.

In New Jersey, arbitration is a favored means of dispute resolution. *See Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) ("in deciding whether to enforce [an] arbitration provision. . . we rely on the well-recognized national policy and the established State interest in favoring arbitration."). And as Defendants note, "New Jersey Courts have continually reaffirmed that all 'doubts as to the scope of arbitration are to be resolved in favor of arbitration.'" (Defs.' Moving Br. 10 (citing *Bruno v. Mark MaGrann Assocs., Inc.*, 909 A.2d 768, 772 (N.J. App. Div.

2006)). Federal courts are also clear that "[w]he[n] there is a contract between the parties that provides for arbitration, there is 'an emphatic federal policy in favor of arbitral dispute resolution.'" *Hoover v. Sears Holding Co.*, No. 16-4520, 2017 WL 2577572, at *1 (D.N.J. June 14, 2017) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *Mitsubishi Motors Corp.*, 473 U.S. at 631 (emphasizing that federal policy also endorses that any uncertainties concerning the scope of arbitrability "should be resolved in favor of arbitration."). To find the Arbitration Agreements unenforceable in this instance would require this Court to ignore this state's (and federal) strong public policy favoring arbitration. As the Third Circuit noted in applying Pennsylvania's infancy doctrine, it "should be limited by the rationale that supports [it]." *See Duncan*, 972 F.2d at 526.

The Court finds that in this instance, requiring Plaintiffs to arbitrate is not contrary to New Jersey public policy. "A court generally will enforce an arbitration agreement unless it violates public policy." *Faherty v. Faherty*, 477 A.2d 1257, 1261 (N.J. 1984). The Court finds that the Arbitration Agreements do not limit Plaintiffs' "substantive rights", but instead, "specifies only the forum in which those rights are vindicated." *Hojnowski*, 901 A.2d at 392. Further, New Jersey labor laws, as previously noted, allow for the employment of minors. And though decided more than a century ago, and in the context of worker's compensation, New Jersey courts have held that a minor cannot disaffirm an employment contract. *See Young v. Sterling Leather Works*, 102 A. 395, 397 (N.J. 1917) ("[The Workmen's Compensation Act] having sanctioned the employment of minors and prescribed under what conditions such employment shall be considered to be . . . it does not lie within the power of a minor to disaffirm such a contract of employment and the obligations springing therefrom."). The Court also notes that Plaintiffs' argument that "minors do not have the capacity to enter valid contracts" is incorrect. (Pls.' Opp'n Br. 6.) The infancy doctrine

11

stands for the proposition that minors may disaffirm a contract (in certain circumstances), not that they have no ability to contract. Presently, certain New Jersey statutes explicitly allow for minors to contract and limit their ability to disaffirm those respective contracts. *See, e.g.*, N.J. Stat. Ann. 18:72-21 (limiting minors' ability to disaffirm the repayment of education loans); N.J. Stat. Ann. 17B:24-2 (limiting minors' ability to disaffirm life or health insurance contracts executed by minor over fifteen years of age); N.J. Stat. Ann. 17:13-102 (limiting minors' ability to disaffirm credit union account agreements). Under the facts alleged here, Plaintiffs have failed to demonstrate that the infancy doctrine should foreclose arbitration.

Perhaps even more compelling, New Jersey courts have required minors to arbitrate previously. The Court finds the New Jersey Supreme Court's decision in *Hojnowski v. Vans Skate Park* and the Superior Court's decision in *Allgor v. Travelers Insurance Co.* applicable here. Plaintiffs attempt to distinguish *Hojnowski*, arguing that the present facts are dissimilar to those in *Hojnowski* because, "[n]o adults were involved in the signing of Plaintiffs' employment documents, except for the adult members of Defendants' staff." (Pls.' Opp'n Br. 8-9.) But the Court finds Plaintiffs' argument unpersuasive. While the Court notes that no adults signed the agreements here, *Hojnowski's* analysis is not so limited. The New Jersey Supreme Court in *Hojnowski* articulated that "permitting *arbitration of a minor's claims is consistent* with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children." *Hojnowski*, 901 A.2d at 393 (citing *Allgor*, 654 A.2d at 1379-81) (emphasis added). Courts in New Jersey have since followed *Hojnowski's* reasoning and affirmed that agreements requiring arbitration of a minor's claims are valid and enforceable. *See Pandya v. Sky Zone Lakewood*, No. A-5064-18T4, 2020 WL 2036645, at *4 (N.J. Super. Ct. App. Div. Apr. 28, 2020) (finding where parent signed an agreement to arbitrate minor's claims, "[b]ecause the Agreement's

12

arbitration clause is valid and enforceable, all disputes between the parties are to be resolved by the arbitrator"); *cf. Dillon v. Ski Shawnee, Inc.*, No. 13-7155, 2014 WL 3900877, at *2 (D.N.J. Aug. 11, 2014) ("A parent can bind a minor child to a forum-selection clause to which the parent agreed to enter."). The Court finds Plaintiffs' attempt to distinguish *Allgor* similarly futile. *See Allgor*, 645 A.2d at 1379 (finding in the context of medical care contracts that "[c]ompelling public policy required binding minors to arbitration").

The Court next addresses cases in other jurisdictions. First, the Court finds the reasoning in *Sheller* instructive. The Court in *Sheller* declined to invalidate an otherwise valid arbitration agreement, finding it would be inconsistent with "[Illinois] public policy reasons underlying the infancy doctrine." *Sheller*, 957 F. Supp. at 153. As it applies in New Jersey, this Court agrees and further notes that it would be inconsistent with New Jersey public policy to nullify an arbitration agreement in this instance because New Jersey courts strongly favor arbitration. *See Martindale*, 800 A.2d at 877. And the New Jersey Supreme Court has already ruled that the State's interest in protecting the best interest of minors is is not impeded by requiring resolution of a minor's claims through arbitration. *See Hojnowski*, 901 A.2d at 393.

Second, the Court finds *Stroupes* unpersuasive. The *Stroupes* Court dismissed the *Sheller* decision because it was not precedential. But *Sheller* is enlightening in interpreting the infancy doctrine. For example, this Court agrees with the *Sheller* Court that if the minors were to disaffirm the contract, they would be required to return any consideration they received. *Boyce*, 273 A.2d at 410 ("New Jersey follows the minority rule that an infant must restore the other party to the status quo to the extent of the benefits the infant has received"); *cf. I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 210 (S.D.N.Y. 2015) (finding that the plaintiff was precluded from disaffirming the contract because "repudiating the contract would nevertheless put her in a superior

13

position than she would have occupied had she never entered the contract."). The Court also disagrees with the *Stroupes* Court finding that "[a] minor suing an employer for sexual harassment is not suing on the contract." *Stroupes*, 2005 WL 5610231, at *4. Courts in New Jersey "generally read the terms 'arising out of' or 'relating to' a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract," including in cases litigating alleged civil rights violations. *Griffin v. Burlington Volkswagen, Inc.*, , 988 A.2d 101, 103 (N.J. App. Div. 2010). And although this Court shares the *Stroupes* Court's concern for the protection of minors, the Court disagrees with *Stroupes'* finding that enforcing the Arbitration Agreements in this instance would "eviscerate" the doctrine altogether. As noted above, the New Jersey Supreme Court has already concluded that "permitting arbitration of a minor's claims is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children." *Hojnowski*, 901 A.2d at 393. Moreover, unlike in *Stroupes,* where the Court relied on Tennessee's Protection of Minor Performers Act to find that the Tennessee legislature implicitly recognized a minor's right to disaffirm employment contracts, *Stroupes*, 2005 WL 5610231, at *5, this Court finds New Jersey's labor laws do not support such a finding.

*Foss v. Circuit City Stores, Inc.* is also unpersuasive.[1] There, Maine codified its infancy doctrine and required that ratification of a contract that a minor signed must be in writing. *See*

---

[1] Plaintiffs also rely on *Douglass.*, 135 P.3d at 132-133, to argue that the agreements to arbitrate is unenforceable because "[d]efendants' employee handbook in this case is also subject to change at this time," reasoning that this causes the consideration to be illusory. *Id.* But courts in this district have rejected this argument. *See Hoover v. Sears Holding Corp.,* No. CV 16-4520, 2017 WL 3923295, at *3 (D.N.J. Sept. 7, 2017) ("At no point does [p]laintiff argue that the clause that allows [d]efendant to alter the Terms and Conditions is within the arbitration provision itself, or that the arbitration clause is not severable from the rest of the contract, if indeed the contract is illusory."); *Bourgeois v. Nordstrom, Inc.*, No. 11-2442, 2012 WL 42917, at *6 (D.N.J. Jan. 9, 2012) ("Such a reservation of rights does not permit [defendant] to choose to avoid the arbitration of existing claims, and thus does not render the promise of arbitration illusory.").

*Foss*, 477 F. Supp. 2d at 236. New Jersey's common law infancy doctrine has no such statutory requirement, and, in any event, the Court finds that the strong public policy favoring arbitration prevails.[2] The Court, therefore, finds that the Arbitration Agreements are valid.

### E. The Claims Fall Within the Scope of the Arbitration Agreements.

Finding valid and enforceable agreements to arbitrate, the Court next turns to whether Plaintiffs' claims fall within the scope of the Arbitration Agreements. *See e.g., Kirleis*, 560 F.3d at 160 (citation omitted). Here, the Arbitration Agreements plainly cover a dispute such as this arising out of Plaintiffs' employment. (*See* Defs.' Certification, Ex. D ("...the resolution of all disputes that arise between you and Brinker will be through formal, mandatory arbitration before a neutral arbitrator. . . . any legal or equitable claims or disputes *arising out of or in connection with employment*, terms and conditions of employment, or the termination of employment with Brinker will be resolved by binding arbitration instead of in a court of law or equity") (emphasis added).) Plaintiffs concede the same. (Pls.' Opp'n Br. 1 ("If Plaintiffs were adults when presented with the arbitration agreement this case would not be before this Court").) The Court, accordingly, finds that this dispute falls within the scope of the agreement to arbitrate.

---

[2] Plaintiffs also cite *PAK Foods Houston, LLC v. Garcia*, 433 S.W.3d 171 (Tex. App. Houston 14th Dist. 2014), *H & S Homes, L.L.C. v. McDonald*, 823 So. 2d 627 (Ala. 2001), *In re Mexican Rests., Inc.*, No. 11-04-00154-CV, 2004 WL 2850151, at *2 (Tex. App. Dec. 2, 2004). (*See* Pls.' Opp'n Br. 10-13.). The Court similarly finds these cases inapplicable because the New Jersey Supreme Court has spoken. *See Hojnowski*, 901 A.2d at 393 ("permitting *arbitration of a minor's claims* is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children.").

15

## IV. CONCLUSION

For the reasons set forth herein, the Court grants Defendants' Motion to Compel Arbitration. This matter is stayed and administratively terminated pending arbitration.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**